UNITED STATES BANKRUPTCY COURT      FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:                 :

                 :  **Chapter 11**

THE CONDOMINIUM BOARD OF MANAGERS  :
OF THE CASSA NY CONDOMINIUM,     :  **Case No. 26-10379 (MEW)**

                 :

         Debtor.     :  **Subchapter V**

-------------------------------------------------------------------x

THE CONDOMINIUM BOARD OF MANAGERS  :
OF THE CASSA NY CONDOMINIUM,     :

                 :

         Plaintiff,    :  **Adv. Pro. No. 26-01018 (MEW)**

                 :

      -against-       :

                 :

SALIM ASSA, *et al.,*         :

                 :

        Defendants.    :

-------------------------------------------------------------------x

RESIDENTIAL BOARD OF MANAGERS OF THE  :
CASSA NY CONDOMINIUM,       :

                 :

         Plaintiff,    :  **Adv. Pro. No. 26-01020 (MEW)**

                 :

      -against-       :

                 :

CONDOMINIUM BOARD OF MANAGERS OF THE  :
CASSA NY CONDOMINIUM and WATERSCAPE  :
RESORTS II, LLC,          :

                 :

        Defendants.    :

-------------------------------------------------------------------x

WATERSCAPE RESORT LLC,      :

                 :

         Plaintiff,    :

                 :  **Adv. Pro. No. 26-01021 (MEW)**

      -against-       :

                 :

CONDOMINIUM BOARD OF MANAGERS OF THE  :
CASSA NY CONDOMINIUM,       :

                 :

        Defendants.    :

-------------------------------------------------------------------x

```
-----------------------------------------------------------------------x
WATERSCAPE RESORT LLC,                         :
                                               :
                                               :
                             Plaintiff,        :
                                               :   Adv. Pro. No. 26-01022 (MEW)
            -against-                          :
                                               :
                                               :
STEPHEN GUTTMAN et al.,                        :
                                               :
                             Defendants.       :
-----------------------------------------------------------------------x
```

**DECISION (1) DENYING MOTION TO DISMISS AND/OR TO REMOVE THE CONDOMINIUM BOARD OF MANAGERS AS DEBTOR IN POSSESSION, (2) CONFIRMING THE CONDOMINIUM BOARD OF MANAGERS' POST-PETITION RIGHTS TO MANAGE THE CASSA NY CONDOMINIUM (INCLUDING THE RIGHT TO ASSESS, COLLECT AND PAY POST-PETITION COMMON CHARGES WITHOUT OFFSETS OR OTHER REDUCTIONS BY REASON OF PRE-BANKRUPTCY DEBTS), (3) MODIFYING PRIOR INJUNCTIONS AND ORDERS ISSUED IN REMOVED PROCEEDINGS, (4) DENYING MOTIONS TO REMAND OR ABSTAIN AND FOR STAY RELIEF, (5) APPROVING THE RETENTION OF COUNSEL, (6) DENYING, WITHOUT PREJUDICE, THE MOTION TO GRANT EXPANDED POWERS TO THE SUBCHAPTER V TRUSTEE, AND (7) DENYING, <u>WITHOUT PREJUDICE, THE TRUSTEE'S MOTION TO COMPEL MEDIATION</u>**

A P P E A R A N C E S :

TARTER KRINSKY & DROGIN LLP
New York, New York
*Proposed Counsel to the Condominium Board of Managers of*
*The Cassa NY Condominium*
     By: Scott S. Markowitz, Esq.
          Rocco A. Cavaliere, Esq.
          Jack M. Manchester, Esq.

ROSENBERG & ESTIS, P.C.
New York, New York
*Attorneys for the Residential Board of Managers of the*
*Cassa NY Condominium and Waterscape Resort, LLC*
     By:  Andrew R. Gottesman, Esq.

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

The Debtor in this case is the Condominium Board of Managers of the Cassa NY Condominium ("the **Condo Board**").  The condominium is divided into separate commercial and residential units, and a separate Residential Board of Managers (the "**Residential Board**") has responsibilities for certain matters that pertain solely to the residential spaces.  The Condo Board has the right to assess and collect common charges and the ability to make special assessments, but it has no other source of revenue.

The hotel spaces closed as a result of the Covid pandemic in 2020.  The prior owner of the commercial spaces then defaulted in the payment of common charges, and its nominees to the Condo Board either resigned or failed to participate further.  The Residential Board obtained a default judgment against the Condo Board in 2021 in an action to recover common charges that the residential owners had overpaid.  The New York State Supreme Court also issued injunctions, and a later TRO, in aid of the enforcement of that judgment.  Waterscape Resort LLC ("**Waterscape**"), in its capacity as the purported manager of the condominium, also filed a disputed Confession of Judgment in 2025 that led to entry of an additional judgment.

The commercial spaces were sold in a foreclosure sale in mid-2025, and the new owner of the commercial spaces designated the members of the Condo Board that it was entitled to appoint.  The new owners of the commercial spaces did not assume the obligations of the prior owners.  The Residential Board contended, however, that a state court injunction issued in 2021, and a separate restraining order issued by the state court in 2026, barred the Condo Board from assessing or collecting any common charges from the Residential Board and/or from the owners of residential units unless and until the condominium first satisfied the judgment that the Residential Board obtained in 2021.  Waterscape asserted its own claims, and the parties

obtained competing temporary restraining orders, from different state court judges, regarding the parties' respective management rights and the enforcement of Waterscape's claims.

The Condo Board filed a bankruptcy petition on February 24, 2026 to try to sort out the mess that the parties' disputes had created. The Debtor has removed, from the New York State courts, the lawsuit in which the original 2021 judgment, the 2021 injunction and the 2026 TRO were issued and three other lawsuits that were pending in the state court.

I held an initial hearing on April 14, 2026 and thereafter I entered an Order in which I confirmed the Debtor's right to proceed under Subchapter V of chapter 11 and in which I denied a motion to dismiss to the extent that it alleged bad faith or mismanagement by the Condo Board. ECF No. 61. I deferred decision of the portions of a motion to dismiss that challenged the resolution to approve the bankruptcy filing, and I asked the parties to address whether the bankruptcy filing could be ratified. *Id.* I also deferred decision of requests that I remove the debtor in possession and/or grant special powers to the Subchapter V trustee pursuant to sections 1183(b)(2) and 1185 of the Bankruptcy Code.

The Residential Board and Waterscape argue that the bankruptcy filing should be dismissed and that actions taken at the relevant meeting of the Condo Board should be treated as a nullity, on the ground that the agenda for the meeting at which the bankruptcy filing was authorized only stated an intent to discuss "how to address" financial difficulties and illiquidity, and did not explicitly state that a bankruptcy filing was a possible solution. They also contend that the injunction and TRO that the state court issued in aid of the enforcement of the 2021 judgment should continue to be given effect, and that the Condo Board should not be allowed to assess, collect and pay post-petition common charges from the residential owners unless and until it first pays the amount due on the 2021 judgment. The Residential Board and Waterscape

4

have also asked that I remand all of the removed actions to the state court and/or that I abstain from exercising jurisdiction over them, and that I lift the automatic stay to allow the state court cases to continue. Finally, they have also objected to the retention of the law firm of Tarter, Krinsky and Drogin as counsel to the Debtor. The Subchapter V trustee filed a separate letter suggesting that it might make sense to compel the parties to mediate their disputes.

When additional disputes surfaced I directed the parties to make submissions as to whether the Condo Board should have the power (unrestrained by the prior state court injunctions and orders) to assess, collect and pay post-petition common charges and expenses, and whether (by virtue of the removals of cases) I can and/or should modify the state court injunctions as the present circumstances may warrant. The parties have made additional filings to address these points, and I held an additional hearing on May 20, 2026.

I now deny the remainder of the motion to dismiss for the reasons stated below. I hold that the prior injunctions issued by the state court to aid in the enforcement and collection of the 2021 judgment have been automatically stayed pursuant to section 362 of the Bankruptcy Code, and that they cannot be relied upon as a ground on which to prevent the Condo Board from performing its post-petition rights and obligations to assess, collect and pay common charges. I will exercise my powers in the removed cases to modify the injunctions to make it abundantly clear that they do not bar the Condo Board from assessing, collecting and paying post-petition common charges or from performing such other functions as the Condo Board is authorized to perform. I decline to remand or to abstain from hearing further proceedings in the removed cases. I approve the retention of Tarter, Krinsky and Drogin as the Debtor's counsel. I decline to remove the Condo Board as debtor in possession, and I deny, without prejudice, the motion to

5

grant special powers to the Subchapter V trustee and the Subchapter V Trustee's request that I

order the parties to participate in a mediation.

**Background**

1.       **The Organization of the Condominium and Its Governing Documents.**

The Cassa NY Condominium was organized under the provisions of Article 9-B of the

New York Real Property Law.  One of the requirements of the organization of a condominium

under New York law is that a declaration must be filed that submits a property to the provisions

of Article 9-B.  *See* N.Y. Real Property Law § 339-n.  Among other things, the declaration must

define the "common elements" in which unit owners will have an undivided interest.  *Id.*  The

term "common charges" is defined in the statute as each unit's "proportionate share of the

common expenses in accordance with its common interest."  *Id*. § 339-e(2).  Common charges

and expenses must be charged to the unit owners according to their respective common interests,

although a board of managers may allocate some expenses in a different manner if the

declaration and by-laws so permit.  *Id.* § 339-m.

The operations of the condominium also must be governed by a set of by-laws, and those

by-laws must be attached to the condominium plan.  *Id*. §§ 339-u.  Section 339-u of the Real

Property Law further provides that "[n]o modification of or amendment to the by-laws shall be

valid unless set forth in an amendment to the declaration and such amendment is duly recorded."

*Id.*  Each unit owner is statutorily obligated to "comply strictly" with the by-laws and with rules,

regulations, resolutions and decisions adopted pursuant thereto.  *Id*. § 339-j.

The board of managers of a condominium has a statutory right to recover sums due from

any unit owner and to recover damages caused by any unit owner's failure to abide by the by-

6

laws. *Id.* Section 339-z also states that the board of managers of a condominium "shall have" a lien on each unit for the unpaid common charges thereof. *Id.* § 339-z.

The Cassa NY Condominium was established pursuant to a Declaration establishing a plan for condominium ownership dated May 28, 2010 (the "**Declaration**"). A copy of the Declaration was attached as Exhibit A to a witness statement submitted by Salim Assa at ECF No. 29-2. The Declaration provides that the property consists of (a) two hotel units that would be operated as a single hotel, (b) a separate commercial space that initially was to be operated as a restaurant, and (3) 53 residential units. Declaration § 3.1. Article 7 of the Declaration identified the Common Elements, and Article 12 defined each unit's interest in the common elements and the manner in which those shares had been determined. Article 21 "expressly" authorized the Condo Board to "allocate and apportion profits and expenses to one or more Commercial Units in a manner different from common profits and common expenses." *Id.*, Article 21. It also provided that profits and expenses could be "allocated and apportioned based on special or exclusive use or availability or exclusive control of particular units or common areas or Common Elements by particular Unit Owners." *Id.* Finally, Article 21 stated that, except as provided in Article 12 of the by-laws, general common charges would be allocated in accordance with the terms of the condominium offering plan for the property. *Id.*

The by-laws for the operation of the condominium were set forth in a set of "Condominium By-Laws of Cassa NY Condominium" (the "**Condo By-Laws**"). ECF No. 29-2, Schedule C. The Declaration also provided for a separate set of "Residential By-Laws of Cassa NY Condominium" (the "**Residential By-Laws**") that were to govern the operation, use and occupancy of the residential units in the condominium. Declaration, § 1.3. The Condo By-Laws provide that the affairs of the condominium are to be governed by a board of managers

consisting of seven members. *See* Condo By-Laws, § 2.1. The Residential Board has the right to appoint three of the Condo Board members, and the owners of the hotel spaces has the right to designate the other four board members. *Id.* § 2.3.1. The board members elected by the hotel owners serve for five-year terms, while the board members designated by the Residential Board serve one-year terms. *Id.* Matters that affect "only" the residential areas are to be decided by the Residential Board as governed by the Residential By-Laws. *Id*. §§ 2.2.1, 2.2.5. Otherwise, the Condo Board has the authority and obligation to decide "all matters" regarding the "operation and administration" of the condominium, including the determination of common charges, special assessments, employment of personnel, and other matters. *Id. § 2.2.2.*

Section 2.9.1 of the Condo By-Laws designated the manner in which board members would meet and the requirements for action by the board, and since the interpretation of this provision is a point of some contention it is worth quoting it in full. Section 2.9.1 states:

> Except as otherwise set forth in Section 2.9.3, all determinations of the Condominium Board shall be made at a meeting of the Condominium Board at which a quorum thereof is Present in Person. Only Board Members in Good Standing shall have the right to vote at meetings of the Condominium Board and only such Board Members shall count for purposes of determining whether a quorum is present. Subject to the preceding sentence, the Presence in Person, at any meeting of the Condominium Board, of Board Members sufficient to cast a Majority Member Vote shall constitute a quorum. Except as may otherwise be required by any Law, these By-Laws and/or the Declaration, a Majority Member Vote, shall constitute the decision of the Condominium Board.

Section 2.9.2 defines what must happen if a quorum does not exist:

> If at any meeting of the Condominium Board a quorum (as defined in Section 2.9.1) does not exist, a majority of those present may adjourn the meeting from time to time to a time, in each case specified on at least ten (10) Business Days' notice, by personal delivery, nationally recognized overnight courier or telecopy (with confirmation of receipt), to the Board Members not Present in Person, until a quorum shall exist. At any such adjourned meeting at which a quorum (determined as aforesaid) exists, any business which

might have been transacted at the meeting originally called may be transacted without further notice.

A separate set of definitions that is appended to the Condo By-Laws states that a "Majority Member Vote" means "a vote of a majority of Condominium Board Members Present in Person and entitled to vote."  Exhibit 1 to Condominium By-Laws.

The Condo By-Laws provide that any board member may resign, in which case a replacement could only be designated by the persons who initially had the right to elect or appoint that board member.  *Id.* § 2.4, 2.5. The parties agreed, at the hearing held before me on April 14, 2026, that there are no provisions in the Condo By-Laws that specify how (if at all) the Condo Board is supposed to function if a majority of the directors have resigned or otherwise fail to participate in meetings.  The Residential Board and Waterscape contend that the Condo By-Laws merely require the approval of actions by a majority of the Board members who are actually present at a meeting, and that the nominees of the Residential Board therefore had the power and authority to take actions on behalf of the full Condo Board when other directors either had resigned or failed to appear.  The Debtor contends that at least four board members must be present at a meeting in order for a quorum to exist, and that all actions that the Residential Board nominees purported to take on behalf of the full board, in the absence of such a quorum, were invalid.  That issue does not need to be decided in connection with the matters being addressed today, but it looms over much of the rest of the parties' disputes.

Article 6 of the Condo By-Laws defines the manner in which common charges and expenses are to be allocated and collected.  Section 6.1.1 makes clear that the Condo Board "shall" determine and allocate common expenses, and that allocations in accordance with the provisions of Schedule B to the By-Laws "are deemed presumptive evidence of reasonableness." *Id.* § 6.1.1.  Instead of providing for the assessment of common charges directly against

9

individual residential units, however, the Condo By-Laws contemplate that common charges that are to be payable in respect of the residential units will be charged to (and payable by) the Residential Board. *Id.* §§ 6.1.2, 6.2, Exhibit 1 to Condo By-Laws. The Residential Board is defined for this purpose as the "General Common Charge Obligor" with respect to the residential units. Exhibit 1 to Condo By-Laws. Residential Common Charges collected by the Residential Board must be paid to the Condo Board "before application for any other purpose." *Id.* § 6.1.9. The Condo Board has the right "to avail itself of the remedy of specific performance" with respect to the obligations of the Residential Board. *Id.*

Section 6.1.4 of the Condo By-Laws provides that the "failure or delay" of the Condo Board to determine the General Common Expenses "shall not be deemed a waiver or modification in any respect of the covenants and provisions hereof or a release of any General Common Charge Obligor from the obligation to pay General Common Charges." *Id.* § 6.1.4. The Condo Board also has the power to levy "special assessments" to meet common expenses. *Id.* § 6.1.5. Special assessments are to be allocated "equitably" in proportion to (a) the respective common interests of the owners, "or" (b) the "anticipated benefit(s) to the affected Unit Owners, as determined by the Condominium Board." *Id.*

The Residential Board has the power to collect general common charges from the residential unit owners. Section 6.1.8 of the Condo By-Laws states that the Residential Board has the sole power to enforce liens against residential units in the event of non-payment. *Id.* § 6.1.8. It is not clear to the Court, at this stage, how this provision applies in light of the terms of section 339-j of the New York Real Property Law, which appears to grant a statutory lien in favor of the Condo Board, and in light of 13.1.2 of the Condo By-Laws, which states that the "Condominium Board" shall have a lien for charges due "from a delinquent Unit Owner." *Id.* §

10

13.1.2.  Nevertheless, "in the first instance" it is the Residential Board that has the exclusive rights of enforcement with respect to defaulting residential unit owners.  *Id.* § 13.3.1.  The Residential Board is obligated, upon a demand by the Condo Board, to "use commercially reasonable efforts" and "promptly, diligently and continuously attempt" to cause the defaulting unit owners to cure their defaults.  *Id.*

The Residential By-Laws, by their terms, are subject to the terms of the Declaration and the Condo By-Laws.  *See* Residential By-Laws § 1.1, ECF No. 29-2, Schedule D.  The Residential Board is entitled to make decisions with respect to matters affecting only the residential units, but its by-laws state clearly that the Residential Board is not authorized to make decisions with respect to the General Common Elements or the commercial units.  *Id*. § 2.2.2.  Section 6.1 of the Residential By-Laws acknowledges that the Condo Board will determine the General Common Expenses that are allocable to the residential section of the building, and that the Residential Board may then allocate and assess to each unit owner a portion of such general common charges.  *Id*. § 6.1.1(a).  It also states that all common charges collected by the Residential Board shall be payable to the Condo Board, in the absence of which the Condo Board shall have a right of specific performance.  *Id*. § 6.1.1(b).

2.     **The Pandemic and the State Court Lawsuits.**

In 2011, an entity known as Waterscape Resort II LLC ("**WRII**") purchased the commercial units in the Condominium.  Although the word "Waterscape" appears in its name, WRII was never affiliated with the "Waterscape" management entity that is owned and/or controlled by Mr. Assa and that is a party to the disputes presently pending in this Court.  WRII was owned by a Chinese company named HNA Group.  HNA financed its purchase of the commercial units with a mortgage loan from Chang Hwa Commercial Bank.

11

The hotel operations closed in May 2020 due to the Covid pandemic.  HNA (the parent of WRII) filed bankruptcy in China, and WRII defaulted on its mortgage loan.  The mortgage lender started a foreclosure proceeding in 2021, leading eventually to a foreclosure sale in 2025.

As some point following the closure of the hotel the members of the Condo Board appointed by WRII either resigned or otherwise failed to appear at board meetings.  There were, therefore, at most only three board members who participated in meetings from March 2020 to September 2025.  In those intervening years the three nominees of the Residential Board purported to take various actions on behalf of the condominium as a whole.

The record shows that the Residential Board entered into a Property Management Agreement with Waterscape dated April 1, 2020.  ECF No. 29-3. The recitals to the Property Management Agreement asserted that the full board of the condominium had deserted its responsibilities and that the Residential Board had decided to appoint Waterscape as the manager of the entire property.  The Residential Board then purported to execute the agreement on behalf of the Condominium itself.

In July 2021, the Residential Board filed a lawsuit in New York State Court (Index No. 156340/2021), naming the Condo Board and WRII as separate defendants.  The Debtor has removed case no. 156340/2021 to this Court following the bankruptcy filing, and the case is now pending in this Court as adversary proceeding no. 26-01020.  The Complaint filed by the Residential Board in the state court alleged that the Residential Board had been forced to pay more than its share of common expenses, and it sought reimbursement of those amounts from the Condo Board and from WRII.  Compl. ¶¶ 2, 30-32.  The Residential Board also complained that the Condo Board had improperly pursued individual residential unit owners to collect common charges and had purported to file liens against residential units on December 28, 2020, even

though the Condo By-Laws and Residential By-Laws state that in the first instance it is the Residential Board that is charged with the right and the responsibility to pursue remedies against individual residential unit owners. *Id.* ¶¶ 33-35, 50-56. The Complaint therefore sought to restrain the Condo Board from "pursuing remedies which are not authorized by the Condominium Documents." *Id., ¶* 36.

The Condo Board, and WRII, did not appear and did not file answers or other responses to the Complaint. The Residential Board asked for, and obtained, the entry of a default judgment. *See* Adv. Pro. No. 26-01020, ECF No. 4-6. The order proposed by the Residential Board, and entered by the state court, stated that the Condo Board had "forfeited any entitlement to collect any payments for General Common Charges from the residential unit owners." *Id.* The order also stated that the Condo Board was obligated to reimburse the Residential Board for any excess payments of common charges that the Residential Board had paid and that the Condo Board should hold "all funds collected, since March 1, 2020, from unit owners for General Common Charges in a constructive trust until it turns those funds over to Plaintiff and must continue to turn those payments over to Plaintiff as long as it fails and refuses to pay for its share of the General Common Expenses." *Id.* The Order also stated that the Condo Board was "permanently enjoined" from filing or enforcing any liens against any residential unit owners for unpaid General Common Charges, and that the Condo Board was directed to remove any liens it had previously recorded. *Id.* Finally, the state court ordered the entry of judgment in the amount of $1,095,998.76 against the Condo Board, and directed that an assessment of damages be conducted on certain other causes of action. *Id.*

WRII and the Condo Board then appeared and sought to vacate the orders that had been entered by default, claiming that the summons had only been served on the Secretary of State

13

and that they had been unaware of the proceedings.  The state court denied that request in a Decision and Order dated March 31, 2022.  *See* Adv. Pro. No. 26-01020, ECF No. 4-7.  A separate money judgment was entered on April 5, 2022.  See Adv. Pro. No. 26-01020, ECF No. 4-8.  It is unclear what happened as to the proceedings that were still contemplated with respect to other causes of action.  WRII and the Condo Board filed a notice of appeal on April 7, 2022, but apparently that appeal was later abandoned.

Further proceedings were instituted in case no. 156340/2021 in early 2026 and prior to the removal of the case to this Court, as will be described in more detail below.

The parties have represented that in October 2023 the nominees of the Residential Board purported, on behalf of the full Condo Board, to make the Condo Board a party to the April 2020 Property Management Agreement that the Residential Board had previously signed with Waterscape Resort LLC.  ECF No. 6-3. The board also purported to designate Salim Assa to make such decisions and to take such actions as might be necessary regarding "the current dire fiscal and operational situation" facing the board.  *Id*.   On March 16, 2024, Mr. Assa, as a "Member and Authorized Person" of the Condo Board, executed a loan agreement under which Waterscape Resort LLC promised to lend up to $10 million with respect to general common expenses, including amounts that had previously been advanced.  ECF No. 29-4.  In 2025 another loan agreement in the amount of $3 million was executed, apparently in the same manner.  *Id*.  Interest on the loans was to accrue at the rate of 15%.  *Id*.   Mr. Assa also executed a Confession of Judgment, purportedly on behalf of the full Condo Board.  In May 2025, he filed that Confession of Judgment on behalf of Waterscape in another state court case (Index No. 654067/2025) filed against the Condo Board.  ECF No. 29-5.  Judgment in that action was entered on July 10, 2025 in favor of Waterscape in the total amount (with interest and costs) of

$10,450,137.64.  Adv. Pro. No. 26-1026, ECF No. 1-2.  This action has since been removed to this Court, where it is now pending as adversary proceeding no. 26-01021.

The foreclosure case against WRII led to the entry of a judgment of foreclosure on February 14, 2025.  The sale was conducted on July 9, 2025 and the mortgage lender (Chang Hwa Commercial Bank, Ltd.) was the highest bidder.  It assigned the right to buy the commercial units to Highgate 2 Hotel LLC ("**Highgate**"), which then was substituted as the named plaintiff in the foreclosure case.  Highgate closed on the purchase on September 5, 2025, and soon thereafter it appointed four members to the Condo Board.  A number of additional disputes then arose.

In November 2025, the Condo Board filed a lawsuit against Salim Assa and various persons and entities associated with him (Index No. 656115/2025), alleging that the defendants had taken unauthorized actions purportedly on behalf of the full Condo Board and were guilty of self-dealing.  Justice Richard G. Latin of the state court issued an Order to Show Cause that temporarily restrained the defendants from taking any action purportedly as agents of the Condo Board and from exercising any rights pursuant to purported agreements with the Condo Board, and from prosecuting any claims against the condominium or the Condo Board.  Index No. NYSCEF 656115/2025, No. 26.  It also stayed the enforcement of the confession of judgment that Waterscape had filed in the separate action described above.  *Id.*  This lawsuit has been removed to this Court and has been assigned adversary proceeding no. 26-01018.

Also in November 2025, Waterscape filed suit against Highgate, the members of the Condo Board that had been nominated by Highgate, and against others (Index No. 656092/2025), alleging that Highgate had failed to pay its share of common charges and had created a crisis that

threatened the ability of the building to function.  This lawsuit has been removed to this Court

and is pending as adversary proceeding no. 26-01022.

On January 21, 2026, the Residential Board sought (in the 2021 lawsuit) the issuance of

an *ex parte* Order to Show Cause and Temporary Restraining Order to enforce the prior

judgment that had been entered.  Index No. NYSCEF 156340/2021, No. 92. The Condo Board

filed a letter dated January 23, 2026 stating that it had learned of the proposed order to show

cause and that it would like an opportunity to submit papers in opposition to it.   *Id*. No. 90.

However, Justice King of the state court issued an Order on January 29, 2026, directing the

members of the Condo Board to show cause as to why they should not be held in contempt for

violating the Court's prior order and judgment.  *Id*. No. 92.  The Order also stated that, pending a

further hearing, the Condo Board "shall refrain from sending any new billing or collection

communications to residential unit owners seeking payment of General Common Charges or any

other residential common-charge payments within the ambit of the January 14, 2022 Decision,

Order and Judgment."  *Id*.  The Condo Board also was preliminarily restrained from "(i) opening,

closing, or modifying any condominium bank account used for billing, collection, receipt, or

disbursement of common charges or general Common Expenses; (ii) changing any payment

instructions to unit owners or implementing any new billing platform or collection process; and

(iii) from taking any action on behalf of the Condominium."  *Id*.  The January 2026 restraints

were preliminary in nature and the Residential Board and Waterscape have acknowledged that

they were issued *ex parte*.  This bankruptcy case was filed before a further hearing on the issues

was held in the state court.

It appears to this Court that the TRO issued in case no. 656115/2025 barred the

Residential Board, Waterscape, and other parties associated with them from taking any action on

behalf of the Condo Board, while the TRO issued by a different judge in case no. 156340/2021 appeared broadly to bar the Condo Board from exercising its own management powers.  The latter TRO has lapsed pursuant to the terms of Fed. R. Bankr. P. 7065, which incorporates the terms of Fed. R. Civ. P. 65 and which applies following the removal of the case to this Court, and which provides that an *ex parte* TRO can only have effect for 14 days.  It is not clear whether the restraining order in case number 616115/2025 has also lapsed.

**3.**    **The Board Resolution Authorizing a Bankruptcy Filing.**

A notice of a special board meeting of the Condo Board was sent on February 3, 2026.  It stated that a meeting would be held on February 17, 2026.  Mr. Assa apparently complained that the amount of notice was too short in light of an intervening holiday, so the date of the meeting was changed to February 19, 2026.  The notice of the board meeting included an agenda which stated that the items of business to be discussed included the following:

> A.  discuss how to address the Condominium Board's current liquidity and financial issues, disputed liabilities, on-going litigations and operational problems.

*See* ECF No. 47, Ex. G.  The minutes show that the four members of the Board appointed by Highgate were present, but that the three nominees of the Residential Board did not appear, though there is no allegation that they failed to receive notice of the meeting.  The minutes show that liquidity and financial issues were discussed and that it was resolved that it "is desirable and in the best interests of the Condominium, its creditors, and other interested parties" that a bankruptcy petition be filed.  *Id.*

The Residential Board and Waterscape contend that the vote in favor of a bankruptcy filing was a nullity because the agenda for the meeting did not explicitly state that a bankruptcy filing was a possible option.  At the initial hearing on April 14, I reserved decision on this issue,

and I asked the parties to submit additional papers discussing whether the filing could be ratified. The Condo Board later sent notice of an additional special meeting to be held on May 13, 2026, at which time the ratification of the prior filing was to be considered. ECF No. 72, ex. A. At a hearing on May 20, 2026 the Court was given a copy of minutes showing the adoption of a resolution that ratified the bankruptcy filing and various other acts. Counsel to the Residential Board and Waterscape contended, however, that ratification was not permitted, and also that the notice of the May 13, 2026 special board meeting was not sent a minimum of ten business days in advance, as the Condo By-Laws require.

4.      **Retention of Tarter, Krinsky & Drogin LLP.**

The Condo Board has proposed to retain the Tarter Krinsky firm as its counsel pursuant to section 327(a) of the Bankruptcy Code. The Residential Board and Waterscape point out that Tarter Krinsky previously represented WRII and that the retainer payment for the proposed representation of the Board was advanced by Highgate. They argue that the attorneys, WRII, Highgate, Highgate's own counsel, and the Debtor allegedly have "undisclosed, entangled financial relationships that directly impact significant issues in the case, warranting denial of the Retention Application." *See* Objection, ECF No. 42, at 4.

5.      **Additional Adversary Proceeding.**

On April 9, 2026, the Condo Board filed adversary proceeding no. 26-01026, seeking a determination as to the validity of liens claimed by Waterscape in certain assets of the Debtor, including liens with respect to common charges.

**Discussion**

I.      **The Bankruptcy Filing Was Properly Authorized.**

The Bankruptcy Code does not establish specific rules relating to an entity's authority to file a voluntary bankruptcy petition, so courts usually look to state law and to the entity's governing documents. *In re Quad-C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013). Some decisions (usually arising in odd circumstances) have "rejected a formalistic approach" to this issue. *See, e.g., In re Soundview Elite, Ltd.*, 503 B.R. 571, 578 (Bankr. S.D.N.Y. 2014). Normally, however, state law will determine whose approval is needed in order for a bankruptcy feeling to be authorized, and whether such approval has properly been given. *See In re Pasta Bar by Scotto II, LLC*, Case No. 15-12766 (MG), 2015 Bankr. LEXIS 3941 *7-8 (Bankr. S.D.N.Y. Nov. 19, 2015); *In re Inwood Heights Hous. Dev. Fund Corp.*, No. 11-13322 (MG), 2011 Bankr. LEXIS 3251 *27-29 (Bankr. S.D.N.Y. Aug. 25, 2011).

A.      **The Initial Board Authorization Was Valid.**

The Condo By-Laws describe the amount of notice that is required for a special meeting of the Condo Board and the manner in which notice is to be provided. The Residential Board and Waterscape do not complain about the timing of the February 19, 2026 board meeting, the manner in which the notice of that meeting was sent, or the persons to whom the notice was sent. They also do not contend that they failed to receive the notice. They argue, instead, that the Condo Board was prohibited from approving a bankruptcy filing (and that the vote in favor of a bankruptcy filing was void) because the agenda for the meeting did not explicitly state that a bankruptcy filing might be considered as a possible solution.

I disagree. The Condo By-Laws state that a notice of a special board meeting should include an "agenda" for the meeting. Condo By-Laws §§ 2.6.2 and 2.6.3. However, the by-laws

19

do not require that the agenda have any particular level of specificity.  Nor do the by-laws say (as the Residential Board and Waterscape would have me hold) that any action by the board at a meeting is void unless that potential action was explicitly identified as a possible course of action in the agenda for the board meeting.  Such a limitation would unduly hamper the freedom of a board to take actions that might be appropriate.

The Residential Board and Waterscape have cited to a separate provision in section 3.4 of the Condo By-laws that relates to notices of a "Unit Owners Meeting."  Section 3.4 requires that the notice of a Unit Owners Meeting must state the purpose(s) of the meeting, and it further provides that "no business shall be transacted at such meeting except as stated in the notice." Condo By-Laws § 3.4.  No such language appears, however, in the provision of the same by-laws that govern special meetings of the Condo Board.  The Residential Board and Waterscape argue that the provision relating to Unit Owners Meetings somehow demonstrates an intent that should be applied to all meetings of all kinds.  The opposite seems plainly to be the case: *i.e.,* the parties knew how to use restrictive language when they wished to do so, but they imposed no such restriction in the case of special board meetings.

I also reject the contention that the board's consideration of bankruptcy departed from the discussion items that were listed in the agenda.  I previously observed that the wording of the agenda may have been a bit "cute" by not referring to a potential bankruptcy filing, but I also observed that this did not mean it was deficient.  The listed item of business was the discussion of "how to address" the liquidity and financial issues, disputed liabilities, on-going litigations and operational problems facing the Condo Board.  Bankruptcy is one of the primary tools that entities use to address problems of those kinds.  I cannot conclude that the Condo Board somehow went out of bounds when it discussed the very topics that had been listed for

discussion and then concluded that the "way to address" those problems – which had also been listed as a topic for discussion – was through a bankruptcy filing.

In arguing the contrary, the Residential Board and Waterscape have cited to a Delaware court decision that held that the termination of officer/directors was not valid, and would be undone on equitable grounds, if the affected persons were not told in advance that the potential termination would be discussed. That decision applied Delaware law (not New York law); and contrary to the objectors' argument, the decision was not based on an alleged deficiency in the notice of the board meeting. The Delaware court actually held that the relevant by-laws did not require any more specificity as to the matters that were to be discussed at the meeting. *See Ghatty v. Mudili*, C.A. No. 2025-0615-LWW, 2025 Del. Ch. LEXIS 257, *10-11 (Del. Ch. Oct. 21, 2025). The court's decision to invalidate the terminations was based on general equitable principles, as the court believed that the officers should have been given the opportunity to defend themselves and their performance. *Id.*, *11-13.

The other two decisions cited by the Residential Board and Waterscape involved situations in which some directors were not given proper notice of a meeting, *Motley v. Southeast Neighborhood House* (*In re Southeast Neighborhood House)*, 93 B.R. 303, 305 (Bankr. D.D.C. 1988), or in which the person who purported to call a meeting did not have authority to do so. *Factor v. Golf View Condominium I,* 150256/2018, 2018 N.Y. Misc. LEXIS 6792, *5-6 (Sup. Ct. Richmond Co. Dec. 18, 2018). Neither of those decisions has anything to do with the specificity of an agenda that accompanies a notice of a meeting.

I find no support in the Condo By-Laws or the case law for the proposition that a board is prohibited from approving a bankruptcy filing, as a way of addressing liquidity and operational

problems, unless the notice of the board's meeting specifically states that bankruptcy is one of the possible solutions, and I see no common sense or equity in imposing such a requirement.

**B.      The May 13, 2026 Meeting to Ratify the Bankruptcy Filing.**

The Residential Board and Waterscape have argued that ratification of the decision to file bankruptcy is not permitted on the theory that a board cannot ratify its own "unauthorized" acts. The cited decisions, however, just held that if the "ratifying" party did not have authority to authorize an act, then the "ratification" was no more effective than the original act. *See In re Ducena*, 676 BR 77, 88 (SDNY 2026) (son filed his mother's bankruptcy petition under a defective power of attorney and there was no indication the problem could be ratified or remedied); *Rare Earth, Inc. v. Hoorelbeke*, 401 F.Supp.26, fn. 11 (S.D.N.Y. 1975) (directors who lacked authority to authorize a lawsuit similarly did not have the power to ratify it). The *Hoorelbeke* decision cited to a passage in the Fletcher Cyclopedia of the Law of Corporations, but that provision merely held that directors cannot "ratify" their own actions if those actions constituted breaches of fiduciary duties. *Fletcher Cyclopedia of the Law of Corporations* §§ 761, 762; *see also id.* §§ 773, 782. The treatise recognized that a general matter ratification can be provided so long as the ratifying body has the authority to take the action. *Id.* § 761.

The cases decided in this Circuit and elsewhere have long confirmed that if a bankruptcy filing was initially unauthorized the board may later ratify it, so long as the ratification is provided with full knowledge and pursuant to a proper procedure. *See In re Martin Trigona*, 760 F.2d 1334, 1341 (2d Cir. 1985) (holding that a post-petition ratification cured any prior lack of authority); *Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997) (an unauthorized voluntary corporate petition can be ratified); *In re Source Enters., Inc.*, 392 B.R. 541, 555 (S.D.N.Y. 2008)

(ratification resolves a debtor's lack of authority to file); *In re Segal*, 527 B.R. 85, 91–92 (Bankr. E.D.N.Y. 2015) (ratification solves procedural defects in a petition).

The Residential Board and Waterscape argue that permitting ratification would be inequitable, citing *Levine v. B&R Acquisition Partners, LLC*, 674 BR 838, 845, 854 (N.D.N.Y. 2025) (equities favored dismissal where a creditor's preference liability depended on the filing date). I disagree. The operations of the condominium were paralyzed by the parties' many disputes. As explained below, bankruptcy will permit the Condo Board to perform the functions that the Board is obligated to perform and that the condominium requires. There are no equities that call for a denial of the Board's right to ratify.

The Condo Board adopted a resolution on May 13 to ratify the bankruptcy filing, and it seems quite clear that a majority of the board intends to ratify the filing. On the other hand, the Residential Board and Watergate appear to be correct in contending that the notice of the May 13, 2026 board meeting was too short to comply with the provisions of the Condo By-Laws. The notice of the meeting was dated April 29, 2026. At the May 20 hearing I said that it appeared to me that the amount of notice given for that meeting was proper. Upon further consideration, however, it appears that counsel to the Residential Board and Waterscape was correct in arguing that when a notice is sent by overnight delivery (as apparently happened in this case) it is deemed, by section 5.1 of the Condo By-Laws, to have been sent on the next business day. Condo By-Laws § 5.1. If the notice is deemed in this case to have been sent on April 30, 2026, then the board meeting on May 13, 2026 was only nine business days thereafter. The Condo By-Laws require ten business days' notice of a special meeting. *Id.* § 2.6.3.

I will not rely on the May 13 ratification to approve the filing, and it is not necessary for me to do so. I note, though, that it is quite clear that a majority of the Condo Board intends to ratify the filing and that it has authority (at a properly-noticed meeting) to do so.

**II.** **The Condo Board Has the Power and Authority to Assess, Collect and Pay Post-Petition Common Expenses and Charges and to Perform All the Post-Petition Rights and Duties Assigned to It Under New York Law, the Declaration, the Condo By-Laws and the Bankruptcy Code. To the Extent that the Prior State Court Injunction and TRO Apply to Such Matters, (a) They Are Nullified by the Automatic Stay and by the Provisions of the Bankruptcy Code, and (b) They Can and Will Be Modified By This Court, Acting as the Court in Which The Relevant <u>Lawsuits Are Now Pending</u>.**

The Residential Board and Waterscape argue that the prior state court orders bar the Condo Board from assessing, collecting and paying post-petition common charges unless they first pay the pre-bankruptcy judgment owing to the Residential Board. They also contend that the state court order otherwise controls what the Condo Board can do in the administration of the assets of the estate during this bankruptcy case. Their positions are contrary to the plain terms of the Bankruptcy Code.

**A.** **<u>Relevant Provisions of the Bankruptcy Code</u>.**

The filing of a bankruptcy petition creates an estate that consists of all of a Debtor's property. 11 U.S.C. §§ 541, 1186(a). A trustee (or the debtor in possession itself in a chapter 11 case, including the debtor in a Subchapter V case such as this one) has the sole right to possess the assets of the estate and to operate the business of the debtor. 11 U.S.C. § 1184. Other persons who are in possession of property of the estate must turn such property over to the debtor in possession. 11 U.S.C. § 542(a). Thus, for example, receivers or other custodians who may have been appointed by other courts prior to the filing of the bankruptcy case may not continue to exercise power over the debtor's assets and business, and must turn over such assets, unless the Bankruptcy Court permits otherwise. 11 U.S.C. § 543.

24

In addition, any person who owes a debt that constitutes property of the estate is obliged to pay that debt to the debtor in possession, unless an offset is permitted under section 553 of the Bankruptcy Code. 11 U.S.C. § 542(b). Section 553, in turn, only permits a setoff if the debt owed *by* a creditor, and the debt owed *to* the creditor, both arose *prior* to the commencement of the bankruptcy case. 11 U.S.C. § 553. In other words, the statute makes clear that if a creditor owes a debt that has arisen *after* a bankruptcy filing, the creditor may not reduce or offset its obligation to pay that post-bankruptcy debt based on the fact that the debtor owed money to the creditor *prior* to the bankruptcy filing. *See Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984).

Secured creditors are entitled to adequate protection of their validly perfected security interests in existing assets. 11 U.S.C. § 361. As a general rule, however, security interests granted prior to bankruptcy do not apply to "property acquired by the estate or by the debtor after the commencement of the case." 11 U.S.C. § 552(a). An exception exists under which a pre-bankruptcy security interest may extend to the "proceeds, products, offspring or profits" of a pre-bankruptcy asset, but even this exception does not apply if "the court, after notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b)(1).

The debtor in possession has the statutory right to use, sell or lease its assets and to operate its business in the ordinary course of business without further court approval. 11 U.S.C. § 363(c). It also has the right, with court approval, to use assets out of the ordinary course of business. 11 U.S.C. §§ 363(b) and (c). The debtor in a Subchapter V case also has the exclusive right to propose a plan of reorganization. 11 U.S.C. § 1189(a). It is the plan of reorganization that describes how pre-bankruptcy obligations are to be handled and that determines the extent to which pre-bankruptcy debts will be discharged.

Various provisions of the Bankruptcy Code also describe the relative priorities in payment to which different obligations are entitled. Amounts that represent the "actual, necessary costs and expense of preserving the estate" constitute administrative expenses that have a higher payment priority than debts that accrued prior to the filing of the bankruptcy case. 11 U.S.C. §§ 503(b), 507(a)(2). The costs and expenses of operating and maintaining a debtor's assets and business after the filing of a bankruptcy petition are considered to be administrative expenses for this purpose, including wages, salaries, utility payments, taxes, repair costs and similar items. See e.g., *In re Ideal Mtge. Bankers, Ltd*., 539 B.R. 409, 429 (Bankr. E.D.N.Y. 2015), *aff'd sub nom. Holzer v Barnard*, 15-CV-6277 (JFB), 2016 WL 4046767 (E.D.N.Y. July 27, 2016) (noting that although the term "administrative expense" is not defined, section 503(b) sets forth several categories of expenses afforded administrative expense priority, which are commonly incurred post-petition); *see also In re Norwalk Furniture Corp*., 418 B.R. 631, 633 (Bankr. N.D. Ohio 2009) (noting that "[g]enerally an administrative expense may be defined as a cost incurred by the bankruptcy estate after the commencement of the bankruptcy case.")

The post-petition expenses of ordinary-course operations are incurred and are paid on an ongoing basis during a bankruptcy case pursuant to the authority granted by section 363(c) of the Bankruptcy Code. By contrast, debts incurred pre-bankruptcy are frozen in place and normally can be paid only as authorized in a confirmed plan of reorganization. A number of provisions of section 362(a) of the Bankruptcy Code ensure that pre-bankruptcy debts cannot be enforced during the bankruptcy case and cannot be relied upon to hinder the post-bankruptcy operations of the Debtor. 11 U.S.C. § 362(a). Section 362(a) provides that the filing of a bankruptcy petition operates automatically as a stay, "applicable to all entities," of:

- "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;"

- "(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;"

- "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;"

- "(4) any act to create, perfect, or enforce any lien against property of the estate;" and

- "(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

11 U.S.C. § 362(a).

As a result of the automatic stay, a host of different forms of orders issued in aid of the enforcement of pre-bankruptcy judgments cease to have effect following a bankruptcy filing.  As noted above, court-appointed receivers must turn assets over to the estate.  Pre-bankruptcy garnishment orders cannot be applied against post-petition earnings.  *See, e.g., In re Hellums*, 772 F.2d 379, 381 (7th Cir. 1985) (wage deductions cannot continue due to the automatic stay).  Injunctions that are issued to assist in judgment collection face the same fate.  The Second Circuit Court of Appeals has made clear, for example, that an injunction that freezes or otherwise restricts the use of a debtor's assets is subject to the automatic stay and cannot be enforced during a bankruptcy case, with the limited exception of an asset freeze order that is obtained by a governmental unit in the enforcement of its police and regulatory power and that is not just in an

27

effort to enforce a money judgment. *See SEC v. Miller*, 808 F.3d 623, 630-631 (2d Cir. 2015);

*see also Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 433

(Bankr. S.D.N.Y. 1990) (creditor's effort to freeze assets was a violation of the automatic stay).

Other injunctions issued in aid of judgment enforcement similarly are overridden by the terms of

the Bankruptcy Code and are stayed once a bankruptcy case is pending.  In *In re C.W. Mining

Co.*, No. 08-20105, 2008 Bankr. LEXIS 4840 (Bankr. D. Utah 2008), for example, a court issued

a pre-bankruptcy injunction to assist in a judgment collection by barring the defendant from

transferring its assets.  The court held that the injunction was unenforceable once the bankruptcy

case was filed:

> When a petition for bankruptcy is filed the stay makes a prepetition
> judgment unenforceable without further order of the court.  This is the case
> even when a supplemental order issued in an attempt to enforce the judgment
> contains restrictive or injunctive-like language.. . . . When the automatic stay
> went into effect, the October 2007 judgment and any orders supplemental
> thereto became unenforceable without first seeking relief from the provisions
> of the automatic stay.

*Id.* at *10-11.  Similarly, in *In re S-Tek 1, LLC*, 625 B.R. 519 (Bankr. D. N. M. 2020), a pre-

bankruptcy state court order directed that if a defendant did not pay the arrears under an

agreement then a non-compete would take effect and the debtor would need to cease operations.

The Court held that the automatic stay rendered the state court order unenforceable once a

bankruptcy petition had been filed.  *Id.* at 526.

The purpose of these various provisions is to ensure that debtors may use and maintain

the assets of the estate and may operate their businesses and pay their administrative expenses,

free of restraints that might have been imposed in pre-bankruptcy proceedings for the

enforcement of pre-bankruptcy debts.  As explained in the Collier's Treatise:

> The trustee or debtor in possession takes control of all property of the estate
> in order to maintain any going concern value and to assure an equitable

28

distribution of the property among creditors.  This requires that no entity seek to interfere with these tasks by taking possession of or exercising control over property of the estate.

3 *Collier on Bankruptcy* ¶ 362.03[5].

### B.    The State Court Injunction and TRO Are Subject to the Automatic Stay and Other Supervening Provisions of the Bankruptcy Code.

The injunction issued by the state court in 2021 was issued to aid the Residential Board in the collection of the 2021 judgment.[1]  The temporary restraining order that was issued by the state court in January 2026 similarly was issued in aid of the enforcement and collection of the 2021 judgment.  As such, their effects are automatically stayed by the provisions of section 362 of the Bankruptcy Code that are cited above.

The Residential Board and Waterscape argue that a state court injunction is not nullified by the removal of an action to the federal court, citing Fed. R. Bankr. P. 9027(i)(3) and the decision in *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 435-437 (1974).  However, Rule 9027(i)(3), and the *Granny Goose* decision, just say that an injunction is not nullified by the act of removal itself.  They say nothing about the effects of the automatic stay.  In fact, the entire issue surrounding the plain provisions of the automatic stay is just ignored in the papers submitted by the Residential Board and Waterscape.

The gist of the argument by the Residential Board and Waterscape is that the Condo Board can and should be prohibited from performing the post-petition duties that it is obligated to perform under the New York Real Property Law, the Declaration, and the Condo By-Laws,

---

[1]    The injunction ceases to have effect once the Condominium pays "its" share of common expenses.  This language is unexplained at this stage and it is somewhat confusing, because the Board of Managers does not owe any "share" of common charges.  The Board of Managers collects common charges from unit owners.  It was WRII, as the prior owner of the commercial spaces, who failed to pay its "share" of common charges.

and that it has the exclusive right to perform under the terms of the federal Bankruptcy Code, all because the Board has failed to pay a pre-bankruptcy judgment. Allowing a pre-bankruptcy judgment to dictate the terms of the post-bankruptcy operations of the Debtor would turn the Bankruptcy Code on its head. It would permit a prior state court order to nullify the applicable provisions of a federal statute. It would also mean that the prior state court judgment would have to be given a payment priority that is higher than the priority given to it under the Bankruptcy Code, and that it would have to be given precedence over the collection and payment of the administrative expenses of operating and maintaining the condominium. That result would be flatly contrary to the terms of the Bankruptcy Code, and contrary to common sense. The effects of the state court injunction and TRO are stayed, and any alleged priorities that such orders supposedly gave to the repayment of the pre-bankruptcy judgment, as well as any restrictions that such orders supposedly placed (in the absence of payment of the judgment) on the abilities of the Condo Board to exercise its powers under the Condo By-Laws, are superseded and overridden by the terms of the Bankruptcy Code.

## C. Recoupment Theories are Not Applicable.

The Residential Board separately argues that it should be permitted to withhold payments of post-petition common charges on "recoupment" grounds.[2] Recoupment is an equitable doctrine that is similar to setoff but that may apply if mutual debts arise under the same transaction. Courts have sometimes permitted the use of recoupment as a method, essentially, of using a pre-bankruptcy debt to offset a post-bankruptcy payment obligation. *United States v.*

---

[2] "Recoupment" is not relevant to Waterscape. The amounts allegedly owed to Waterscape arise under a Loan Agreement. The obligations to pay post-petition common charges are obligations of the Residential Board and the owners of residential units, not of Waterscape.

*Consumer Health Servs. of Am., Inc.*, 108 F.3d 390, 395-96 (D.C. Cir. 1997); *Ashland Petroleum Co. v. Appel (In re B&L Oil Co.)*, 782 F.2d 155, 158-59 (10th Cir. 1986). However, the doctrine only applies to the extent that obligations arise out of a single transaction, and even then only to the extent that a court concludes that "it would be inequitable for a debtor to enjoy the benefits of that transaction without also meeting its obligations." *Malinowski v. New York State Dep't of Labor (In re Malinowski)*,156 F.3d 131, 133 (2d Cir. 1998) (emphasis in original). The doctrine of recoupment "is a limited one and should be narrowly construed." *New York State Elec. & Gas Corp. v. McMahon (In re McMahon)*,129 F.3d 93, 97 (2d Cir. 1997).

I do not believe that "recoupment" is available to the Residential Board. The judgment in favor of the Residential Board was issued in 2021. That judgment relates to expenses that accrued before that time. Any post-bankruptcy common charges will relate to expenses incurred after the filing of this 2026 bankruptcy case. The residential owners' obligations to pay current common charges arise out of different expenses, transactions and events, and do not arise out of the same "transaction" as the events that gave rise to the 2021 judgment. The Condo By-Laws may be a common denominator, but that by itself is not enough to conclude that a single "transaction" occurred here.

Nor do I see any "equity" in allowing the use of recoupment in the manner that the Residential Board has suggested. The Residential Board and Waterscape have acknowledged, in one of the state court lawsuits that they filed in November 2025, that a failure to pay ongoing common charges creates a dire situation that is potentially ruinous for the condominium as a whole. Adv. Pro. No. 26-01022, ECF No. 1-1, ¶ 3. They nevertheless want me to endorse their efforts to engineer a situation in which the operations of the condominium are effectively paralyzed unless and until someone else – the only possible party being Highgate – agrees to

31

bear the full financial consequences of WRII's prior defaults and to pay the 2021 judgment, even though Highgate did not assume the obligations of WRII when Highgate acquired the commercial spaces.  The Residential Board and others may have legitimate rights to payment, and it is clear that Highgate, Mr. Assa and others are going to have to learn to live with each other and to find an equitable way of allocating the financial consequences of WRII's prior defaults.  Preventing the collection of post-petition common charges and expenses in the meantime, and bringing the operations of the condominium to a halt, is not the right answer and would not be the "equitable" solution.

> ### D.    Modification of the Injunction and TRO To Conform to Bankruptcy Rules and Principles.

The state court case in which the 2021 injunction and the 2026 TRO were issued has been removed to this Court and is now pending before me.  The temporary restraining order issued by the state court in 2026 has apparently expired pursuant to the terms of Rule 7065 (which incorporates the terms of Fed. R. Civ. P. 65) because it was issued on an *ex parte* basis more than fourteen days ago.  However, the final hearing on the various pending requests, and on the restraints imposed by the state court, was not held in the state court, and I now have authority over the parties' respective applications.  In addition, the 2021 injunction – even if viewed as a final order – is, like any continuing injunction, a matter that remains subject to modification by the issuing court based on changed circumstances and equities.  *Horne v. Flores*, 557 U.S. 433, 447 (2009); *see also* Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60(b)(5), which provides for relief from an order when "applying it prospectively is no longer equitable").

In a curious twist, counsel to the Residential Board and Waterscape argued at the May 20 hearing that because the pre-bankruptcy injunction and TRO are now part of a proceeding in this Court they should not be subject to the automatic stay.  This makes no sense.  The removal of the

32

cases did not alter the application of the automatic stay to the injunction and TRO that the state

court had issued in aid of enforcement of the pre-bankruptcy judgment. *See In re Cashco, Inc.*,

599 B.R. 138, 147-48 (Bankr. N.M. 2019) (holding that the automatic stay does not bar removal

itself but continues to apply to the removed proceeding unless the Court orders otherwise).

Relief from the automatic stay, for the purpose of enforcing a pre-bankruptcy judgment against

post-petition assets and in limitation of post-petition operations, requires entry of an order by this

Court that approves such a result; it does not and cannot happen automatically merely because a

party files a removal petition.

In any event, it is clear to me, based on the various arguments that the Residential Board

and Waterscape have made, that the best and clearest course is for me to exercise my authority

(as the current presiding judge over the case in which the 2021 injunction and the 2026 TRO

were issued) to modify those orders. The discussion above makes clear that the relevant facts

have changed dramatically. There is now a new owner of the commercial spaces, and the parties

agree that the new owner did not assume the debts of WRII. Of even greater importance is the

commencement of the bankruptcy case itself. Even if the injunction and TRO were justified as a

judgment collection mechanism outside of bankruptcy, the fact of the bankruptcy filings plainly

has altered the relative priority of the pre-petition judgment in relation to the collection and

payment of the post-petition expenses and obligations of the condominium. Allowing the unpaid

pre-petition judgment to restrain the post-petition finances, management and operation of the

condominium also would be contrary to the requirements of the Bankruptcy Code. The Condo

Board also has the right and the obligation, under the Bankruptcy Code, to perform the duties

assigned to it under the New York Real Property Law, the Declaration, and the Condo By-Laws.

I therefore will issue an order that makes clear that the 2021 injunction and the 2026 orders

33

issued by the state court, and other orders that may have been issued in the removed proceedings, (a) do not apply to the post-bankruptcy assets and operations of the Debtor, (b) do not restrict in any manner the post-petition right and ability of the Condo Board to perform any of the functions assigned to is under the New York Real Property Law, the Declaration and the Condo By-Laws, including but not limited to all rights that the Condo Board has to assess, collect and pay post-petition common charges and to enforce the Unit Owners' and the Residential Board's obligations to pay such charges, (c) do not permit the Residential Board or any Unit Owner to reduce its payment of assessed post-petition common charges by reason of alleged debts that were owing to the Residential Board and/or any Unit Owner prior to the bankruptcy filing, and (d) do not otherwise elevate the payment priority of the 2021 judgment or of other debts that may have arisen, prior to the bankruptcy filing, in favor of any Unit Owner or the Residential Board. I will also enter an Order confirming, as stated above, that "recoupment" and offset theories cannot be used by any Unit Owner to reduce its obligations to pay post-petition common charges.

## III.    I Decline to Remand the Removed Cases or to Abstain from Hearing Them.

The Residential Board and Watergate have asked me to remand the state court cases or to abstain from hearing them, and also to grant relief from the automatic stay to allow the state court proceedings to continue.  I hold that "mandatory" abstention is not applicable here, that "permissive" abstention or remand would not be appropriate, and that the proposed stay relief would be unwarranted.

### A.    Mandatory Abstention Is Not Applicable.

The Residential Board and Waterscape contend that abstention is "mandatory" in these cases pursuant to section 1334(c)(2) of title 28 of the United States Code, which states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Three requirements must be met before mandatory abstention applies. First, the relevant disputes must be ones that are merely "related to" a bankruptcy case; mandatory abstention does not apply if matters "arise under" the Bankruptcy Code or if the relevant disputes "arise in" a bankruptcy case. *See. In re Residential Capital, LLC*, 515 BR 52, 63-64 (Bankr. S.D.N.Y. 2014). Second, section 1334 of title 28 must be the sole basis on which federal jurisdiction could be asserted; mandatory abstention does not apply if some of the issues arise under federal law or if another basis for federal jurisdiction applies. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003) (mandatory abstention not warranted where action included claims under federal securities law). Third, mandatory abstention is only proper if the matters can be "timely adjudicated" in the state court. Those conditions are not met here.

Claims and issues "arise under" the Bankruptcy Code if they are based on the application of provisions of the Bankruptcy Code itself. Issues "arise in" a bankruptcy case if they "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 153 (2d Cir. 2016) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). Section 157 of title 28 identifies a number of "core" proceedings that "arise under" the Bankruptcy Code or that "arise in" bankruptcy cases, and it makes clear that such "core" matters are not to be regarded as matters that are merely "related to" a bankruptcy case. *See* 28 U.S.C. § 157(b)(3) (distinguishing

"core" proceedings from "related to" proceedings); *Stern v. Marshall*, 564 U.S. 462, 476-477 (2011) (holding that the statutory list of "core" proceedings represents "ready examples" of matters that "arise in" a bankruptcy case or "arise under" the Bankruptcy Code, and that it would be a "contradiction in terms" to contend that a "core" proceeding is merely "related to" a bankruptcy case). Mandatory abstention does not apply to "core" proceedings. *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002).

The Bankruptcy Court is charged with determining whether a proceeding is a "core" proceeding, and the mere fact that "its resolution may be affected by State law" is not enough to remove a proceeding from the "core" category. *Id.* "Core" proceedings include, but are not limited to, the following enumerated items:

- "matters concerning the administration of the estate," *id.* § 157(b)(2)(A);

- "allowance or disallowance of claims against the estate," *id. §* 157(b)(2)(B);

- "counterclaims by the estate against persons filing claims against the estate," *id.* § 157(b)(2)(C);

- "orders to turn over property of the estate," *id.* § 157(b)(2)(E);

- "motions to terminate, annul, or modify the automatic stay," *id*. § 157(b)(2)(G);

- "determinations of the validity, extent, or priority of liens," *id*. § 157(b)(2)(K);

- "orders approving the use or lease of property, including the use of cash collateral," *id*. § 157(b)(2)(M); and

- "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims . . ." *Id*. § 157(b)(2)(O).

Proceedings that are "core" proceedings under subsection 157(b)(2)(O) include proceedings that are "unique to or uniquely affected by the bankruptcy proceedings" as well as proceedings that "directly affect a core bankruptcy function." *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999) (citations omitted). Non-bankruptcy issues that are inextricably intertwined with bankruptcy issues are "core" proceedings. *Lebenthal Holdings, LLC v. South St. Sec. Holdings Inc. (In re Lebenthal Holdings, LLC)*, 2018 Bankr. LEXIS 2217 *8-9 (Bankr. S.D.N.Y. July 27, 2018) *BGFI GP I LLC v. Prieto* (*WP Realty Acquisition III, LLC)*, 626 B.R. 154, 159 (Bankr. S.D.N.Y. 2021 (holding that "actions arising from pre-petition contracts can be deemed core if the parties' dispute impacts core bankruptcy functions). Proceedings that directly affect the administration and operation of an estate also are "core" proceedings. *In re Prudential Lines, Inc.*, 170 B.R. 222, 231 (S.D.N.Y. 1994) (litigation was a "core" proceeding where the asserted claims were "clearly a crucial issue in the administration of the estate").

The removed cases, and the issues that now must be decided in them, are not merely "related to" the current bankruptcy case. In addition, at least one of the actions involves a claim under federal law, which could have been commenced in federal court without relying on section 1334 of title 28 as a ground for jurisdiction. More particularly:

- Adversary Proceeding No. 26-01018 (case number 656115/2025 in the state court) is a lawsuit filed by the Condo Board that seeks, among other things, to invalidate certain obligations that allegedly are owed to Waterscape under a management agreement that the nominees of the Residential Board approved. Waterscape's claims under the management agreement are the subject of a filed proof of claim, and litigation over the validity of the management agreement involves a claim against the estate and is a "core" matter. *See* 28 U.S.C. § 157(b)(2)(B). A pending motion in

that case also seeks to enjoin the enforcement of the Confession of Judgment upon which Waterscape has relied; that, too, is a "core" proceeding regarding claims against the estate. The lawsuit also seeks a declaration that certain common charge liens asserted by Waterscape are invalid, which is a "core" issue under § 157(b)(2)(K). Another pending motion seeks the turnover of bank account access keys and other items, and the lawsuit also seeks a declaration that various residential units be forfeited and turned over to the Condo Board. These are proceedings to declare that property belongs to, and should be turned over to, the estate, and those are "core" issues. 28 U.S.C. § 157(b)(2)(E). There are pending motions to enjoin Waterscape and other defendants from purporting to act on behalf of the Condo Board; these issues are now inextricably tied up with the bankruptcy issues that are described above regarding the authority of the Condo Board (under the Bankruptcy Code) to conduct the post-petition affairs of the condominium. Finally, a RICO claim has been asserted in this case, so that the case is not one in which only state issues exist or in which bankruptcy would have been the sole basis for federal jurisdiction.

- Adversary Proceeding No. 26-01020 (case number 156340/2021 in the state court) is the lawsuit in which the court issued the injunction and TRO that are the basis for the arguments by the Residential Board and Waterscape that the Condo Board is prohibited from assessing and collecting post-petition common charges and expenses. The issues raised by the proposed continued enforcement of the injunction and TRO are inextricably tied to the application of various provisions of the Bankruptcy Code. Issues regarding the continued effect of the injunction, and modification of the same to comply with the requirements of the Bankruptcy Code, "arise under" the

Bankruptcy Code and have plainly arisen "in" this bankruptcy case. Those issues are of direct (even paramount) importance in determining how the Debtor may function and how it may assess and pay the post-petition common expenses that accrue.

- Adversary Proceeding No. 26-01021 (case number 654067/2025 in the state court) is the case in which Waterscape filed a confession of judgment. As noted above, the Condo Board seeks to invalidate the confession of judgment in adversary proceeding no. 26-01018. The parties' disputes over the confession of judgment are disputes as to claims and are "core" matters under section 156(b)(2)(B).

- Adversary Proceeding No. 26-01022 (case number 656092/2025 in the state court) is a proceeding in which Waterscape has sued the Condo Board, Highgate, and various persons associated with Highgate, contending that Waterscape had a valid management agreement and that the Condo Board improperly sought to terminate it, giving rise to a damage claim. Waterscape also sought judgment declaring that the termination was void and that Waterscape continued to have authority to act as the property manager for the full condominium board. Decision of those issues will determine the extent to which obligations allegedly owed to Waterscape, as well as debts incurred by Waterscape in the name of the condominium, are actually owed by the condominium. The proceeding therefore relates to claims against the estate and is a core proceeding under section 157(b)(2)(B). Motions also were pending at the time of removal in which the parties sought declarations and injunctions as to their respective rights to manage the affairs of the condominium. Those issues are inextricably intertwined with Bankruptcy Code issues regarding the management rights of the Condo Board.

The various state court actions are not merely tangentially related to this bankruptcy case. The disputes over management of the condominium, and the post-petition powers of the Condo Board, are critical to performance of the Board's statutory duties and the maintenance of the property. *See WP Realty Acquisition III, LLC,* 626 B.R. 154, 160-61(Bankr. S.D.N.Y. 2021) (disputes relating to control of the debtor were "core" proceedings). The whole key to this bankruptcy case, and to the development of a plan of reorganization, is a prompt determination of (a) what obligations the condominium owes to what parties, and (b) what (if any) assessments or other tools the Condo Board will use to address those liabilities. The disputes that are sprinkled throughout the state court lawsuits, and the ability of the condominium to function while those disputes are sorted out and addressed, are at the heart of this bankruptcy case, and are not just sideshows to it.

Mandatory abstention is not available for the additional reason that these are not matters that can be "timely adjudicated" in the state court. One of the primary issues in deciding whether litigation in a state court would be "timely" is whether it would unduly prolong the administration of the bankruptcy estate. *See Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 580-82 (2d Cir. 2011). The removed cases involve issues regarding (a) the ongoing management of the Debtor (as to which federal bankruptcy law takes precedence), (b) the extent to which pre-bankruptcy injunctions may be enforced in light of the automatic stay, (c) the enforcement of various pre-bankruptcy loan agreements, management agreements and a confession of judgment, (d) whether certain claimed security interests are valid under bankruptcy law or are void, and (e) the relative priority of a pre-petition judgment (which is governed by the Bankruptcy Code, not state law). It is quite evident, even if some portions of the removed cases could someday be decided in the state court, that the bankruptcy issues would have to be decided

first, and that the automatic stay would need to remain in effect to prevent the possible entry of orders that would conflict with bankruptcy requirements. The Residential Board's desire to enforce the state court injunctions to permit collection of a pre-bankruptcy judgment, and the competing restraining orders that the parties obtained in state court regarding management of the condominium, highlight the risks that would exist if the cases were allowed to proceed in state court. In addition, even if there were any residual state law issues that could somehow be separated from this morass without danger to the bankruptcy proceedings themselves, the state courts could only resolve them in five separate state court lawsuits of indeterminate duration. It makes far more sense, and will be far more expeditious, for me to resolve all of the issues at one time and in connection with the confirmation of a plan of reorganization. Abstention "would simply complicate and slow down the resolution" of the issues that must be resolved in order for this chapter 11 case to be completed. *In re Glob. Crossing, Ltd. Sec. Litig.,* 311 B.R. 345, 349 (Bankr. S.D.N.Y. 2003).

### B.    Permissive Abstention and Remand are Not Warranted

This Court has the discretion to decline to exercise jurisdiction over a removed case "in the interest of justice, or in the interest of comity with State courts or respect for State law[.]" 28 U.S.C. § 1334(c)(1). The moving party has the burden of demonstrating that such "permissive" abstention is appropriate. *Hough v. Margulies (In re Margulies)*, 476 B.R. 393, 402 (Bankr. S.D.N.Y. 2012) (*citing Bickerton v. Bozel S.A. (In re Bozel, S.A.)*, 434 B.R. 86, 102 (Bankr. S.D.N.Y.2010)). Courts have identified twelve factors that may be considered in deciding whether to grant permissive abstention. Those factors include:

- the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

- the extent to which state law issues predominate over bankruptcy issues;

- the difficulty or unsettled nature of the applicable state law;

- the presence of a related proceeding commenced in state court or other non-bankruptcy court;

- the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

- the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

- the substance rather than form of an asserted 'core' proceeding;

- the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

- the burden of the court's docket;

- the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;

- the existence of a right to a jury trial; and

- the presence in the proceeding of non-debtor parties.

*See Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11 Civ. 1927 (RJS), 2012 U.S. Dist. LEXIS 39616, *17-18, 2012 WL 967582, *6 (S.D.N.Y. Mar. 13, 2012); *Langston Law Firm v. Mississippi*, 410 B.R. 150, 156 (S.D.N.Y. 2008); *N.Y. City Employees' Retirement Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308, 332 (S.D.N.Y.2003); *In re Gordon*, No. 09-16230 (AJG), 2011 Bankr. LEXIS 3446, *9-10, 2011 WL 3878356 (Bankr. S.D.N.Y. Aug. 30, 2011).

Although the factors listed above may be relevant, courts are not required to consider all of them in deciding whether to grant permissive abstention. "In determining whether to exercise

42

permissive abstention under § 1334(c) courts have considered **one or more** (not necessarily all) of twelve factors." *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y. 2002) (emphasis in original). "The factors largely ask the Court to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts." *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 712-13 (S.D.N.Y. 2013). The analysis "is not a mechanical or mathematical exercise" and the court "need not plod through a discussion of each factor in the laundry lists developed in prior decisions." *In re Janssen*, 396 B.R. 624, 636 (Bankr. E.D. Pa. 2008). "'Ultimately, the pursuit of "equity," "justice" and "comity" involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances.'" *Id.* (quoting *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, No. 04 Civ. 708(GEL), 04 Civ. 709(GEL), 04 Civ. 710(GEL), 2004 U.S. Dist. LEXIS 8168, *11, 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004)); *see also Winstar*, 2007 U.S. Dist. LEXIS 90482, 2007 WL 4323003 at *16 ("Under all these circumstances, common sense dictates the conclusion that the Bankruptcy Court is the proper forum for resolving these disputes.").

Section 1452 of title 28 also provides that the court to which an action has been removed "may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452. A remand motion also is committed to the sound discretion of the bankruptcy court. *Irwin v. Olson & Bearden (In re Irwin)*, 325 B.R. 22, 28 (Bankr. M.D. Fla. 2005). Courts have identified a variety of factors that may be considered in making such a decision. *Id.* I will not separately list them because the parties here agree, and other courts have held, that the factors that may be considered with respect to the remand motion are essentially the same as the factors that may be considered in deciding the permissive abstention issues. *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011).

I will deny the motion for permissive abstention and/or remand. This Court has a strong and overwhelming interest in adjudicating the claims in the removed cases, for the many reasons already explained above. The parties' disputes revolve around their respective rights to control the post-petition management and operations of the Debtor, the relative priorities of the pre-bankruptcy judgment in relation to the post-bankruptcy operations and finances of the condominium, and the manner in which pre-bankruptcy obligations should be satisfied or discharged. Those issues are inextricably intertwined with many provisions of the Bankruptcy Code. Keeping the cases here is the best way to ensure the proper application and enforcement of the relevant provisions of the Bankruptcy Code that affect these issues, as well as being the best way to achieve an efficient and timely end to the parties' disputes. Allowing a piecemeal resolution of some but not all of the relevant issues in a series of separate state court lawsuits would just slow down the proceedings and potentially lead to confusion and conflicting results.

The Residential Board and Waterscape have also argued that the Debtor is just seeking, in bankruptcy, to evade prior state court orders, and that I should regard this as a factor in favor of remand and/or abstention. I believe that the more accurate description of the set of motions before me is that the Residential Board and Waterscape want to return to state court so that they can try to avoid the application of the federal Bankruptcy Code. There is no equity or common sense in permitting such a thing. The very arguments that the Residential Board and Waterscape have made just underscore the importance of my retention of jurisdiction over the removed cases so that the operations of the condominium can be stabilized, so that the pre-bankruptcy obligations may be treated in the manner contemplated by the Bankruptcy Code, and so that the Condo Board can perform its post-petition duties.

C.    **Stay Relief Is Not Warranted.**

The Residential Board and Waterscape also argue that I should not only remand or abstain with regard to the removed cases, but that I should also grant relief from the automatic stay. In their view, the New York State Court (not this Court) is the court that should decide what effect the prior state court injunction and TRO will have during this bankruptcy case and what the Condo Board can and cannot do, on a post-petition basis, in the assessment and collection of post-petition common charges. Nothing could be further from the truth. It is for this Court, having jurisdiction over the bankruptcy case, to enforce the terms of the Bankruptcy Code, including the automatic stay.

IV.    **Retention of Counsel.**

Attorneys who are to be retained under section 327(a) of the Bankruptcy Code must be "disinterested." 11 U.S.C. § 327(a). A "disinterested person" is someone who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C).

Tarter, Krinsky & Drogin represented WRII in prior proceedings. The firm would be conflicted to the extent that the Condo Board seeks to pursue whatever claims it might have against WRII, and other counsel would have to be engaged for that purpose. Despite the rhetoric and accusations in the objectors' papers, however, I fail to see how the prior representation of WRII creates any conflict of interest or otherwise affects the disinterestedness of the Tarter, Krinsky & Drogin firm in representing the Debtor in this bankruptcy case.

The retainer that was paid to Tarter, Krinsky & Drogin was advanced by Highgate. The Residential Board and Waterscape have portrayed this as a sign of a secret and foreboding

connection between the parties.  However, the retainer was paid at a time when the Residential

Board and Waterscape were contending (by virtue of liens and other restraining notices) that any

funds that were payable to the Condo Board had to be paid to them.  There was little choice

under the circumstances but for Highgate itself to advance the retainer.  The extent to which

Highgate has a claim against the condominium by reason of this advance can be decided later.

As counsel to the Residential Board and Waterscape have acknowledged, bankruptcy courts have

often approved payments of retainers by related parties so long as the counsel plainly owes its

obligations to the debtor and not to the party who advanced the retainer.  Tarter, Krinsky and

Drogin does not represent Highgate (Highgate has its own counsel), and the many allegations of

a secret and subversive connection are unsubstantiated and appear to be fanciful.  I will approve

the retention.

## V.      Other Motions.

I will deny the request by the Residential Board and Waterscape for entry of an order

removing the Condo Board as debtor in possession.  I do not believe the circumstances identified

in the papers warrant such relief.  Indeed, the grounds upon which the Residential Board and

Waterscape seek this relief are essentially just the same allegations of bad faith and

mismanagement that I previously overruled in connection with the initial motion to dismiss.

I will deny, without prejudice, the request to grant special powers to the Subchapter V

Trustee.  I do not believe the present circumstances warrant such relief, but given the parties'

prior disputes it is conceivable that this conclusion could change.

The Subchapter V trustee (Ms. Wee) suggested by letter that the Court consider the

possibility of ordering the parties to mediate their remaining disputes.  I will approve mediation

if and when the parties are willing to proceed, but I do not have the sense that the issues have

been sufficiently defined, or that the parties are quite ready emotionally, for me to compel a mediation.  I will therefore deny Ms. Wee's request, but without prejudice to renewal if and when circumstances change.

**VI.    Identification and Coordination of Open Issues and Scheduling.**

At the conclusion of the May 20 hearing the Court asked the parties to put together a joint statement of all of the issues that need to be resolving in this bankruptcy case and in the adversary proceedings, and otherwise in the process of preparing a plan of reorganization, so that we may schedule further proceedings to resolve the issues as efficiently as possible.  Pending motions for contempt findings, if the parties still intend to pursue such matters, should be included in the list that the parties prepare.

## Conclusion

For the foregoing reasons, this Court will issue one or more Orders: (1) denying the motion to dismiss or the motion to remove the Condo Board as debtor in possession; (2) holding that the state court injunctions do not restrict the post-petition management rights of the Condo Board, including but not limited to its authority to assess, collect and pay common charges and expenses; (3) modifying the state court injunctions and temporary restraining orders to conform to the supervening requirements of the Bankruptcy Code; (4) denying the motions for mandatory abstention, permissive abstention, remand and/or relief from the automatic stay as to the actions that have been removed from state court to this court; (5) approving the retention of Tarter, Krinsky & Drogin LLP as attorneys for the Debtor; (6) denying, without prejudice, the motion by the Residential Board and Waterscape to give special powers to the Subchapter V trustee; and

(7) denying, without prejudice, the request by the Subchapter V trustee that I order the parties to

submit to mediation.

Dated:  New York, New York
      May 26, 2026

/s/ **Michael E. Wiles**
Honorable Michael E. Wiles
United States Bankruptcy Judge
